IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LESLIE ROSADO-MONTES,

    Plaintiff,

    v.

UNITED STATES OF AMERICA, ET AL.,

    Defendants.

Civil No. 13-1158 (SEC)

**OPINION AND ORDER**

Before the Court are the defendants' motion to dismiss (Docket # 6), the plaintiff's opposition thereto (Docket # 9), and the defendants' reply. Docket # 14. After reviewing the filings and the applicable law, the defendants' motion is **GRANTED in part and DENIED in part**.

**Factual and Procedural Background**

This is a case under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680, concerning the alleged unlawful disclosure of plaintiff Leslie Rosado-Montes' (Rosado) confidential medical information. Rosado also alleges violations under the Constitution, the Health Insurance Portability and Accountability Act of 1996 (HIPAA), Pub.L. No. 104-191,110 Stat.1936 (1996), and the Privacy Act, 5 U.S.C. § 552a. The defendants are the United States of America; the Department of Veterans Affairs, the institution who oversees the Veteran's Hospital in San Juan, Puerto Rico (VH); Eric Holder, the Attorney General; Rosa Emilia Rodríguez, the United States Attorney for the District of Puerto Rico; and Eric Shinseki, the Secretary of the Department of Veterans Affairs. The well-pleaded facts in the complaint—extending every reasonable inference in Rosado's favor, see A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013)—are as follows.

The events giving rise to this suit occurred at the VH, during May and June, 2009. Docket # 1, ¶ 12. On May 23, Rosado, a veteran who had been working as a "resident nursing

**Civil No. 13-1158 (SEC)**                                                                                   Page 2

student" at the VH, "began feeling a strong pain in his lower back and groin," id.  He promptly was admitted to the VH's emergency room, where doctors treated him. Id. at ¶ 13. Eight days later, a doctor told him "that he was doing well and they had cured him of all his medical conditions." Id. at ¶ 17. A confused Rosado "asked the doctor to explain to him what was happening." Id. The doctor obliged, informing him that he had "Syphilis and Chlamydia" Id. HIV tests, the doctor further informed Rosado, were administered. Id. ¶ 19.

During his hospitalization, Rosado told Margieliz Quintero and Victor Sánchez — a "classmate" and his "best friend," respectively — about his diagnosis. Id. ¶¶ 14, 26. "He was assured by both of them that it would be kept confidential." Id. ¶ 26. According to the complaint, however, his other classmates "access[ed] his medical records." Id. ¶ 30. "A couple of days later," Rosado was released and resumed his "nursing training" at the VH. Id. ¶ 28. As it happened, Rosado tested negative for HIV, id. ¶ 27, though, shortly thereafter he "began to feel intense abdominal pain, and was admitted once again" to the VH. Id. ¶ 30. This time, he requested to be hospitalized in a different floor, "to avoid his classmates being able to access his medical record," id. ¶ 30.  The VH granted his request. And he was hospitalized for eight more days. Id.

According to the complaint, after he returned "to his training," another nurse told him, "in a mocking manner if he had kissed a man in the mouth." Id. ¶ 31. "As time went by," the complaint avers, Rosado's classmates "continued to speak about "sexual[ly] transmitted diseases," all while pointing at him in the hallways and "whisper[ing] in his presence." Id. ¶ 35. In the same time frame, María Biascochea, "the lead nurse of the eight floor," id. ¶ 33, met with Rosado and told him that "his classmates had complained about him." Id. ¶ 37. Then, Biascochea allegedly "confessed she had access to [his] [medical] record because she needed to know who he really was." Id. She also explained that she wanted to confirm comments regarding Rosado's "mental conditions" that, according to the complaint, were made by the director of the nursing internship program. Id.

**Civil No. 13-1158 (SEC)**                                                                                    Page 3

Things escalated, and Rosado complained to Kiomara Bonilla, the VH's so-called "privacy official." Id. ¶ 38. According to the complaint, Bonilla told Rosado that she would investigate the apparent breach of his medical information. Id. ¶ 38. "A week later," Bonilla furnished Rosado with a list of the employees who had accessed his records and instructed Rosado to "mark any person that did not have authorization to view his records." Id. ¶ 38. He identified that seven employees, including Biascochea, Heriberto Quintero (Margieliz Quintero's father), and several other nurses. Id. ¶ 39.

After Rosado returned to school, "the situation worsened," id. ¶ 42, after a classmate said to him: "Margieliz told me you have Chlamydia, Syphilis, Hepatitis B, and that [you] were HIV positive" and that she was telling everyone because it was [your] fault that her father was going to lose his job." Id. ¶ 44. Rosado filed an administrative claim with the Department of Veterans Affairs and received a "Notice of Right to Sue" on September 1, 2012. Id. ¶ 47.

This suit ensued. Docket # 1. The complaint, alas, is an exemplar of how not to draft a complaint. It omits the "claim for relief" (or "statement of the claim") section, see Lexmark Int'l, Inc. v. Static Control Components, Inc., No. 12-873, 2014 WL 1168967, *10 n. 6 (U.S. Mar. 25, 2014) (noting that an "element of a cause of action, . . . must be adequately alleged at the pleading stage in order for the case to proceed"), thereby obfuscating (unnecessarily) the pleadings.[1] Indeed, the complaint is so poorly drafted that it is difficult to determine upon what theory the action is based. At bottom, however, Rosado appears to claim that the defendants violated the FTCA, the Privacy Act, HIPAA, Title VII, and the Constitution by allowing the VH's employees unlawful access to his confidential medical information. He alleges that such an illegal disclosure has caused him "moral damages and mental anguish," Docket # 1 ¶ 48; and that he was "humiliated, discriminated, [and] harassed . . . ." Id. ¶ 50. He seeks six million dollars in damages.

---

[1] See also, e.g., Boggs v. 3M Co., 527 F. App'x 415, 417 (6th Cir. 2013) (Sutton, J.) (remarking that "while the pleading requirements of . . . Rule 8(a) are modest, . . . they are not non-existent").

**Civil No. 13-1158 (SEC)**                                                                 Page 4

The defendants move to dismiss for want of subject-matter jurisdiction, see Fed. R. Civ. P. 12(b)(1), and for failure to state a claim upon which relief could be granted, see Fed. R. Civ. P. 12(b)(6). Docket # 6.[2] Specifically, they claim that (1) "[t]here is no state tort analog cause of action under HIPAA," id., p. 4; (2) HIPAA provides no private cause of action, id., p. 6; (3) the complaint "is outside the scope of the FTCA," id., p. 7; and (4) the complaint fails to state a claim against the individual defendants, id., p. 10. Rosado opposed. Docket # 9.

**Standard of Review**

Rule 12(b)(1) is the appropriate vessel for challenging a court's subject-matter jurisdiction. Valentín v. Hospital Bella Vista, 254 F.3d 358, 362-63 (1st Cir. 2001). In reviewing a motion to dismiss under this rule, the court construes the plaintiffs' allegations liberally and "may consider whatever evidence has been submitted, such as . . . depositions and exhibits." Carroll v. United States, 661 F.3d 87, 94 (1st Cir. 2011) (internal quotation marks and citations omitted). Accordingly, courts are empowered to "[w]eigh the evidence and make factual determinations, if necessary, to determine whether it has jurisdiction to hear the case." Massachusetts Delivery Ass'n v. Coakley, 671 F.3d 33, 40 n. 8 (1st Cir. 2012) (citing Torres-Negrón v. J & N Records, LLC, 504 F.3d 151, 163 (1st Cir. 2007)). When faced with a jurisdictional challenge courts must credit the plaintiffs' well-pleaded factual averments and indulge every reasonable inference in the pleader's favor. Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010) (citing Valentin, 254 F.3d at 363). Nonetheless, a plaintiff faced with a subject-matter jurisdiction challenge has the burden to demonstrate its existence. Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007) (citations omitted).

For its part, Rule 12(b)(6) authorizes the dismissal of a complaint that fails to state a claim upon which relief could be granted. To avoid dismissal, a complaint must provide "a short

---

[2]When, as here, a defendant's subject-matter jurisdiction challenge is based on the face of the complaint (also called a "facial attack on a complaint"), courts "merely . . . look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [plaintiff's] complaint are taken as true for purposes of the motion." Torres-Negrón v.. J & N Records, LLC, 504 F.3d 151, 162 (1st Cir. 2007).

**Civil No. 13-1158 (SEC)**                                                                                               Page 5

and plain statement of the claim showing that the pleader is entitled to relief." Fed. R .Civ. P. 8(a)(2). At the pleading stage, the plaintiffs need not demonstrate likelihood of success, but their claims "'must suggest more than a sheer possibility that a defendant has acted unlawfully.'" García-Catalan v. United States, 734 F.3d 100, 102-03 (1st Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In other words, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007). A claim has facial plausibility when a "complaint's non-conclusory factual content . . . [permits] the court to draw the reasonable inference that [each] defendant is liable for the misconduct alleged.'" Gianfrancesco v. Town of Wrentham, 712 F.3d 634, 639 (1st Cir. 2013) (quoting Iqbal, 556 U.S. at 663).

**Applicable Law and Analysis**

For cases, such as this one, where no diversity of citizenship exists between parties, "jurisdiction turns on whether the case falls within 'federal question' jurisdiction." Ortiz-Bonilla v. Federación de Ajedrez de Puerto Rico, Inc., 734 F.3d 28, 34 (1st Cir. 2013). Because the defendants' motion to dismiss is grounded on two different grounds—Rules 12(b)(1) and 12(b)(6)—the Court would normally consider the Rule 12(b)(1) challenge first. See, e.g., Deniz v. Municipality of Guaynabo, 285 F.3d 142, 149 (1st Cir. 2002) ("When a court is confronted with motions to dismiss under both Rules 12(b)(1) and 12(b)(6), it ordinarily ought to decide the former before broaching the latter." (citations omitted)). But where, as here, "both federal jurisdiction and the existence of a federal claim turn upon whether the complaint states a federal question, the preferable practice is to assume that jurisdiction exists and proceed to determine whether the claim passes muster under Rule 12(b)(6)." Estate of Soler v. Rodríguez, 63 F.3d 45, 47 n. 1 (1st Cir.1995). Following this approach, the Court evaluates the plausibility of each of the claims asserted by Rosado.

*Constitutional and Title VII Claims*

As said, Rosado's complaint is poorly drafted, to say the least. In the first page of his complaint, Rosado mentions "the Constitutional Right to Due Process under the US Constitution

**Civil No. 13-1158 (SEC)**                                                                    Page 6

and under supplemental jurisdiction principles in the interest of judicial efficiency and economy." Docket # 1 ¶ 4. In the third sentence, meanwhile, he invokes "Title VII, 42, Civil Rights Act 1964 . . . ." Docket # 1 ¶ 4. These inadequately plead (and frivolous) claims are now summarily dismissed.

The short of it is that these purported claims were not even pled as causes of action, but, rather, briefly mentioned on the first page of the complaint. See id., p. 1. And such a lackluster effort sounds the death knell on them. See Marrero-Rodríguez v. Municipality of San Juan, 677 F.3d 497, 501 (1st Cir. 2012) ("Plaintiff's purported Fourth Amendment claim fails to meet the pleading standards of Iqbal [since it] was not even pled as a claim, but only mentioned on the first page of the complaint." (citation omitted)); Fábrica de Muebles J.J. Alvarez, Incorporado v. Inversiones Mendoza, Inc., 682 F.3d 26, 34 (1st Cir.2012) (affirming dismissal under Iqbal "because ... statutes are briefly mentioned in the complaint . . . rather than pled as causes of action ..."); see also Alicea v. Machete Music, No.12-1548, --- F.3d ----, 2014 WL 888909, at * 6 (1st Cir. Mar. 7, 2014) ("The mere mention of a Lanham Act claim in the opening paragraph of the plaintiffs' complaint is not enough to make out such a claim as part of the plaintiffs' cause of action . . . ." (citations omitted)).[3] These wholly unplausible claims are, therefore, **DISMISSED**.

*Remaining Claims*

The same conclusion could follow regarding the purported claims under HIPAA, the Privacy Act, and the FTCA. Again, neither claim was pled as a cause of action, making them

---

[3] In all events, these claims would still fail. Many reasons abound, but it suffices to name a few. For one thing, the Privacy Act's comprehensive remedial scheme governing the maintenance and use of agency records precludes separate constitutional claims. See Chung v. U.S. Department of Justice, 333 F.3d 273, 274 (D.C.Cir .2003) (affirming the dismissal of constitutional claims as "encompassed within the remedial scheme of the Privacy Act"). For another, the United States has not waived its sovereign immunity for constitutional torts. See FDIC v. Meyer, 510 U.S. 471, 476-77 (1994); accord Villanueva v. United States, 662 F.3d 124, 127 (1st Cir. 2011) (holding that "constitutional tort claims are not cognizable under the FTCA"). Finally, it appears that these wholly perfunctory claims would be time barred by the applicable statute of limitations.

**Civil No. 13-1158 (SEC)** Page 7

amenable to summary dismissal for the reasons just given. In the interest of justice, however, the Court cuts some slack to Rosado on these inadequately pleaded claims. After all, the gist of Rosado's complaint are the alleged violations of his privacy rights, so contrary to the unplausible claims dismissed above, these (potentially plausible) claims give the defendants some idea of the injuries Rosado claims to have suffered.

I.   *HIPAA*

The HIPAA claim is readily dispatched. The defendants are right that this court lacks jurisdiction to entertain this claim, for it is beyond dispute that HIPAA creates no private cause of action. E.g. Dodd v. Jones, 623 F.3d 563, 569 (8th Cir. 2010); Acara v. Banks, 470 F.3d 569, 570–72 (5th Cir. 2006). While "HIPAA provides for civil and criminal penalties to be imposed on persons who improperly handle or disclose individually identifiable health information . . .[,] the law specifically indicates that only the Secretary of Health and Human Services or authorized state authorities may bring forth a HIPAA enforcement action." Padilla-Ruiz v. United States, 893 F. Supp. 2d 301, 309 (D.P.R. 2012) (emphasis added) (quoting Valentín Muñoz v. Island Finance Corp., 364 F.Supp.2d 131, 136 (D.P.R. 2005)). No more is needed to conclude that this claim fails. The defendants' motion to dismiss is thus **GRANTED** on this score, and this claim is **DISMISSED**.

*II.*   The Privacy Act

Rosado's purported claim under the Privacy Act appears to stand on stronger footing. The Privacy Act bars federal agencies from disclosing "any record which is contained in a system of records by any means of communication to any person, or to another agency" without the consent of "the individual to whom the record pertains," unless the disclosure falls within one of its narrow exceptions. 5 U.S.C. § 552a(b). To that end, the Privacy Act mandates that agencies establish safeguards to protect individuals from the disclosure of confidential records "which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained." 5 U.S.C. § 552a(e)(10); see Doe v. Chao, 540 U.S. 614, 618 (2004). Pertinently, the Act allows an aggrieved individual to sue for "actual

**Civil No. 13-1158 (SEC)**                                                                                                    Page 8

damages," 5 U.S.C. § 552a(g)(4)(A), if the federal government intentionally or willfully violates the Act's requirements "in such a way as to adversely affect the individual." F.A.A. v. Cooper, 132 S. Ct. 1441, 1446 (2012) (quoting § 552a(g)(1)(D)). So unlike HIPAA, the Privacy Act does create a private right of action under § 552a(g), which is "limited to actions against agencies of the federal government and does not apply to state agencies or individuals." Pérez-Santos v. Malavé, 23 F. App'x 11, 12 (1st Cir. 2001) (per curiam).

      Here, the Court need not decide if Rosado has pled a plausible claim under the Privacy Act. This is so because the defendants nowhere contest this claim in their motion to dismiss. And Rosado's Privacy Act claim is neither frivolous nor implausible: The Privacy Act applies to the Department of Veterans Affairs, see, e.g., Hunt v. U.S. Dep't of Veterans Affairs, 739 F.3d 706 (D.C. Cir. 2014) (per curiam); and according to the complaint, VH employees intentionally disclosed Rosado's confidential medical information without his consent. And such a disclosure, he claims, has caused his damages.

      To be sure, this claim is still subject to the Privacy Act's two-year statute of limitations, see Reyes v. Supervisor of Drug Enforcement Admin., 834 F.2d 1093, 1095-96 (1st Cir. 1987) (citing U.S.C. § 552a(g)(5)), and it appears from the complaint that Rosado did not bring this suit within two years of the alleged Privacy Act violations. (The alleged violations occurred in 2009, but the complaint was filed in 2013.) Yet the defendants ignore this point (which is unsurprising given their jettisoning discussion of this claim). Still, it is unclear whether exhausting administrative remedies under the FTCA could equitably toll the prescriptive period. See Boyd v. United States, 932 F. Supp. 2d 830, 839 (S.D. Ohio 2013). This court need not decide this issue on its own accord, however, since it does not go to its subject-matter jurisdiction. See Rouse v. U.S. Dep't of State, 567 F.3d 408, 415 (9th Cir. 2009); but see Diliberti v. United States, 817 F.2d 1259, 1262 (7th Cir. 1987). While the First Circuit does not appear to have taken a stance on this apparent circuit split, see Boyd, 932 F. Supp. 2d at 839 (collecting circuit split on this point), one would think that it would follow Rouse's modern holding, especially in light of the Supreme Court's "endeavor[ ] in recent years to bring some

discipline to the use of the term jurisdictional." Gonzalez v. Thaler, 132 S. Ct. 641, 648 (2012) (internal quotation marks omitted); see also Henderson ex rel. Henderson v. Shinseki, 131 S. Ct. 1197, 1202 (2011) (noting that "[b]randing a rule as going to a court's subject-matter jurisdiction alters the normal operation of our adversarial system"); Alphas Co., Inc. v. William H. Kopke, Jr., Inc., 708 F.3d 33, 37 (1st Cir. 2013) (discussing difference between jurisdictional requirements and claim processing rules). The Privacy Act claim will therefore stand.

   III.  *FTCA*

  Next are the defendants' challenges to the FTCA claims. As it happens, "[t]he Privacy Act does not limit the remedial rights of persons to pursue whatever remedies they may have under the FTCA for violations of their interests in personal privacy." O'Donnell v. United States, 891 F.2d 1079, 1085 (3d Cir. 1989).

  The FTCA, the avenue by which individuals may sue the United States government for the tortious conduct of its employees, Mahon v. United States, 742 F.3d 11, 12 (1st Cir. 2014), permits individuals to sue the government "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). Such a waiver of sovereign immunity, however, is a "limited waiver," Sánchez ex rel. D.R.-S. v. United States, 671 F.3d 86, 107 (1st Cir. 2012), "giving federal courts jurisdiction over civil claims against the government . . . under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. Sánchez v. United States, 740 F.3d 47, 50 (1st Cir. 2014) (quoting 28 U.S.C. § 1346(b)(1)).

  As related, the defendants first contend that the FTCA claim fails because "there is no state tort analog to a cause of action under HIPPA." Docket # 6, p. 4. Maybe so. But their argument misses the point. Federal law "cannot function as the source of FTCA liability," Bolduc v. United States, 402 F.3d 50, 56 (1st Cir. 2005), which is why "[t]he United States waives sovereign immunity 'under circumstances' where local law would make a 'private

**Civil No. 13-1158 (SEC)**                                                                 Page 10

person' liable in tort." <u>United States v. Olson</u>, 546 U.S. 43, 44 (2005) (emphasis omitted). And, as correctly argued by Rosado — but ignored by the defendants — the Puerto Rico Supreme Court has recognized tort claims for invasion of privacy, e.g., <u>Rios-Piñeiro v. United States</u>, 713 F.3d 688, 693 (1st Cir. 2013) (citing and construing Puerto Rico law), having held that this tort claim "operates <u>ex proprio vigore</u> and [is] enforceable between private individuals." <u>Colón v. Romero Barceló</u>, 12 P.R. Offic. Trans. 718, 722 (1982) (collecting Puerto Rico case law); <u>see also</u> <u>CMI Capital Mkt. Inv., LLC v. González-Toro</u>, 520 F.3d 58, 64 (1st Cir. 2008) ("[i]t is an oft-cited precept of Puerto Rico law that the concept of fault is as broad as the behavior of human beings, and that it includes any fault that causes harm or injury." (citations and internal quotation marks omitted)). The upshot is that "claims for violations to dignity and privacy protections . . . brought under the Puerto Rico Constitution translate into suits amenable to FTCA liability." <u>Rosario v. United States</u>, 538 F. Supp. 2d 480, 493 (D.P.R. 2008); <u>cf.</u> <u>Díaz Reyes v. United States</u>, 770 F. Supp. 58, 63 (D.P.R. 1991) (noting that Puerto Rico "has never fashioned a court-made rule requiring disclosure of medical conditions to third parties"), <u>aff'd sub nom.</u> <u>Dias Reyes v. United States</u>, 971 F.2d 744 (1st Cir. 1992).

The defendants next contend that Rosado's claims fall "outside the scope of the FTCA," maintaining that the complaint's allegations show that the employees who accessed the medical records "acted outside the scope of their employment." Docket # 6, p. 9; <u>see</u> <u>Rodríguez v. United States</u>, 455 F.2d 940, 942 (1st Cir.1972) (per curiam) ("That the government employee who caused the particular injury was in the course of his employment is one of the basic requirements" of a FTCA claim). They say that the allegations in the complaint itself "show the employees who accessed Plaintiff's medical records did not have a need to know this information to perform this jobs, and accessing this information was not part of their duties." Docket # 6, p. 8. But this undeveloped argument is unamenable to disposition at the pleadings stage.

"Whether or not a particular act is within the scope of employment is a matter to be determined in accordance with the law of the place in which the alleged negligent act or

**Civil No. 13-1158 (SEC)**                                                                                                          Page 11

omission occurred." <u>Borrego v. United States</u>, 790 F.2d 5, 6 (1st Cir. 1986). But the defendants neglect to discuss, much less apply, the three elements — adopted by the Puerto Rico Supreme Court — that determine whether or not employees act within the scope of their employment. <u>See</u> <u>Attallah v. United States</u>, 955 F.2d 776, 782 (1st Cir. 1992) (construing and discussing Puerto Rico law on this point). And that omission suffices to summarily deny their request. "[L]itigants should not seriously expect to obtain a remedy without doing the necessary leg work first." <u>Silverstrand Investments v. AMAG Pharm., Inc.</u>, 707 F.3d 95, 107 (1st Cir.), <u>cert. denied</u>, 134 S. Ct. 174 (2013).

In all events, from the facts alleged in the complaint, and drawing all reasonable inferences in Rosado's favor, it is not implausible that the unauthorized access and disclosure of Rosado's medical information benefited — if only minimally — the VH. <u>See</u> <u>Borrego</u>, 790 F.2d at 7 (noting that an employee's desire to "serve, benefit or further" her employer's interest is the "fundamental consideration" in determining whether her acts fall within the scope of employment (citation and internal quotation marks omitted)). According to the complaint, Biascochea accessed his medical records to, among other things, inform other VH employees about Rosado's "mental problems and . . . high suicide risk." Docket # 1, ¶ 40. And common sense supports the reasonable inference that Biascochea did that out of concern for the workplace safety. <u>Cf.</u> <u>A.G. ex rel. Maddox v. v. Elsevier, Inc.</u>, 732 F.3d 77, 83 (1st Cir. 2013) (drawing on common sense to assess plausibility standard).

Discovery will shed light on the nature and extent of the employees' access and disclosure of Rosado's medical information, and whether the VH benefited therefrom. <u>Cf.</u> <u>Menard v. CSX Transp., Inc.</u>, 698 F.3d 40, 45 (1st Cir. 2012) (Boudin, J.) ("[s]ome latitude may be appropriate where a plausible claim may be indicated based on what is known at least where, as here, some of the information needed may be in the control of [the] defendants." (alteration in original; citation and internal quotation marks omitted)). For now the Court need only decide that Rosado may proceed beyond the pleading stage. Of course, with the necessary evidentiary support, the defendants may still succeed on this score at the summary-judgment stage, <u>see</u>

**Civil No. 13-1158 (SEC)**                                                                                       Page 12

Vernet v. Serrano-Torres, 566 F.3d 254, 262 (1st Cir. 2009), but, at this plaintiff-friendly stage, the defendants' request to dismiss Rosado's FTCA claim is **DENIED**.

*Individual Defendants*

Lastly, the individual defendants — Eric Holder, Rosa Emilia Rodríguez, and Eric Shinseki — seek dismissal from the claims asserted against them. They maintain that none of the statutes alluded to by Rosado provides a cause of action against them. Failing to concede (as he must), Rosado opposes. But his riposte is neither sound nor intelligible, see Docket # 9, p. 13, and comes perilously close to contravening Rule 11; see Fed. R. Civ. P. 11(b)(2) (legal contentions must be "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law"). The claims against the individual defendants fail at the starting gate.

Starting with the FTCA, it is settled beyond hope of contradiction that the only proper defendant in an FTCA action is the United States. E.g., Roman v. Townsend, 224 F.3d 24, 27 (1st Cir. 2000). The same is true with respect to the Privacy Act Claim; no individual liability attaches, as the only proper defendant is the "agency" — here the Department of Veterans Affairs. See, e.g., Martinez v. Bureau of Prisons, 444 F.3d 620, 624 (D.C.Cir. 2006) (per curiam); Perez-Santos, 23 F. App'x at 12. To say more on this point would be pointless. All the claims against the individual defendants are, therefore, **DISMISSED**. Barring the Privacy Act claim, all other claims against the Department of Veterans Affairs are also **DISMISSED**. E.g., Walters v. Smith, 409 F. App'x 782, 784 (5th Cir. 2011) (per curiam).

**Conclusion**

For the reasons stated, the defendants' motion to dismiss is **GRANTED in part and DENIED in part**. The only surviving claims are those under the Privacy Act and the FTCA against the Department of Veterans Affairs and the United States, respectively. All other claims, including those against the individual defendants, are **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of March, 2014.

*s/Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge